This is an appeal from a Superior Court judgment vacating an arbitrator's award reinstating a Winthrop police officer, Ferruccio Romeo, who was terminated for submitting a request to be paid for a special detail that he allegedly did not perform. The detail consisted of an eight-hour shift monitoring traffic at a pump station in the town of Winthrop (town). Romero worked the pump station detail (detail), but he was not physically present at the pump station during most of the shift. Instead, he was at the town hall negotiating a contract on behalf of the Winthrop Police Brotherhood Local 421 (union). The arbitrator found that Romeo did not act dishonestly in requesting payment for the detail because Romeo had understood that the detail was mobile and, as a result, his physical presence was not required as long as he was available to respond to any incident. The arbitrator further found that Romeo did not lie to the Winthrop police chief (chief) during the chief's investigation or when testifying at the town's due process hearing. Accordingly, the arbitrator ruled that the town lacked just cause to terminate Romeo and ordered Romeo's reinstatement with back pay.
The town filed a complaint in Superior Court to vacate the arbitrator's award. The union filed motions to confirm the award and for attorney's fees. In response, the town filed a cross motion to vacate the arbitrator's award. A judge allowed the town's motion and denied the union's motions. Judgment entered vacating the arbitrator's award. Because no underlying misconduct by Romeo was found by the arbitrator, we conclude that the judge erred in determining that the arbitrator's award violates public policy, and we are constrained to reverse. See Boston v. Boston Police Patrolmen's Assn., 477 Mass. 434, 435, 445 (2017) (Boston Police Patrolmen's Assn. ).
Background. On November 24, 2014, Romeo signed up to work a special detail at the town's pump station. The purpose of the detail was to provide traffic control in connection with a beach nourishment project funded by the Massachusetts Department of Conservation and Recreation (DCR). The project involved the movement of sand and rocks to Winthrop beach. The detail ran from 7 A.M. until 3 P.M. , and the detail officer was to receive a one-hour lunch break and bathroom breaks as needed. The detail officer was required to sign in at 7:00 A.M. and report to the DCR office, but the officer was not required to be present at the pump station until 9:00 A.M. , after which the officer was permitted to drive along the truck route between the pumping station and the beach as long as the police radio was on and the officer was available to respond to any incident.
On the morning of November 24, 2014, Romeo, dressed in his police uniform, reported to the police station around 7:30 A.M. , after which he drove a police cruiser to the pump station. He returned to the police station around 9:30 A.M. , and then went to the town hall where he engaged in a negotiation session on behalf of the union from about 10:00 A.M. until 2:30 P.M. [2] That day, Romeo submitted a request to be paid for eight hours of work on the detail.
The next day, the chief, who was present at the negotiation session the day before, noticed that Romeo had submitted a slip for eight hours for working the detail the day before. On December 1, 2014, the chief questioned Romeo as to how he could have been working the detail on November 24, 2014, when he was at town hall negotiating on behalf of the union. Romeo responded that it was his understanding from speaking with two DCR employees that the detail was a "floating" or mobile detail that did not require him to remain on-site. After speaking with the two DCR employees and other Winthrop police officers, all of whom expressed their belief that the detail was a stationary detail that required the officer to be physically present, the chief concluded that Romeo had submitted a false time slip and had lied during the chief's investigation with respect to the duties and responsibilities of the detail. The chief placed Romeo on administrative leave pending the outcome of an internal investigation regarding the detail.
On December 18, 2014, the town held a due process hearing to consider Romeo's actions. Following the hearing, on January 9, 2015, the town manager discharged Romeo for committing a dishonest act and for untruthfulness.[3] Romeo filed a grievance to challenge his dismissal, and ultimately the matter was submitted to arbitration. The parties agreed to submit the following questions to the arbitrator: (1) "Was there just cause for the termination of Officer Ferruccio Romeo?" and (2) "If not, what shall be the remedy?"
The arbitration hearing spanned the course of four nonconsecutive days during which Romeo, the chief, a police sergeant, and a DCR employee testified. In addition, the arbitrator considered the testimony that had been presented at the town's due process hearing. The arbitrator found that Romeo was working the pump station detail on November 24, 2014, even though he was negotiating at town hall during part of that detail, because Romeo was "available" the entire detail shift; but that he should have asked for or received permission to work the detail from the town hall. Despite this failure on Romeo's part, the arbitrator found that Romeo had not been dishonest because Romeo "acted on his belief that he could use the [t]own [h]all as his base from which he could execute the detail." The arbitrator also found that Romeo did not lie to the chief when he conveyed his understanding based on conversations with DCR employees that the detail was a floating detail or during his testimony at the due process hearing. The arbitrator concluded that there was no just cause to terminate Romeo, that Romeo be given a letter of warning for failing to receive prior authorization to work the detail from an alternate location, and that Romeo be made whole for all lost wages and benefits.
A Superior Court judge concluded otherwise when she vacated the arbitration award.[4] The judge determined that Romeo's actions violate "a well-defined, dominant public policy that dishonesty by police officers will not be tolerated," such that "the decision to reinstate him would offend public policy." While noting that Romeo "is not the first police officer to make a billing error," the judge stated that Romeo's termination "is warranted because of his dishonesty, compounded by his unwillingness to take responsibility for disobeying the [d]etail's rules." The judge observed that the award ordering Romeo's reinstatement "appears to invite, if not encourage, double billing from public funds for doing details at which [officers] are intentionally not even present." She also concluded that, despite the limited circumstances in which an arbitrator's award can be vacated, the award reinstating Romeo must be vacated because the arbitrator had failed to articulate the reasons why he credited Romeo's "erroneous belief" that he could perform the detail duties from an unapproved location.
Discussion. a. The arbitration award. The union's primary argument is that the judge erred in vacating the arbitrator's award on public policy grounds because, in light of the arbitrator's finding that Romeo did work the detail and did not lie, Romeo's reinstatement did not violate public policy. We agree.[5]
The outcome here is controlled in all material respects by Boston Police Patrolmen's Assn., in which the Supreme Judicial Court held that the public policy exception cannot bar a police officer's reinstatement where "the arbitrator found that [the officer] acted reasonably and truthfully." Id. at 443. Here, as in that case, the arbitrator's award does not violate the well-defined public policy requiring honesty in police officers because the arbitrator found that Romeo was not dishonest. The result we reach may have been different had the chief or DCR outlined the parameters of the detail or expressly stated that the detail required the officer's physical presence the entire time, but they did not. Nonetheless, where, as here, the arbitrator found no underlying misconduct, the award ordering reinstatement must be affirmed.
b. Attorney's fees. The judge also denied the union's motion for reimbursement of its attorney's fees. The union contends that it was entitled to fees and costs under G. L. c. 231, § 6F, because the town "knowingly drafted a complaint that ignored the Arbitrator's conclusions." On appeal, the union asks us to vacate the judge's order denying its request for attorney's fees and remand the issue for further consideration. We decline to do so.
Conclusion. The judgment vacating the arbitrator's award is vacated and a new judgment shall enter affirming the arbitrator's award.
So ordered.

Romeo was the union president and had held that position for eleven years.

As described by the arbitrator in his findings, the town manager drew the following conclusions: "1. .... During the time that you billed for [the] detail [on November 24, 2014], you were not present at the detail. Billing for services rendered without being present constitutes unacceptable judgment[,] fraud, and conduct unbecoming a police officer. 2. The above referenced conduct constitutes a dishonest act which is contrary to the trust that citizens put in public safety officers. 3. You specifically stated that the engineers from the [DCR] stated to you that it was unnecessary for you to be physically present at the detail. Your statement was specifically contradicted by the DCR resident engineer as was well as the DCR inspector. Your assertion that you didn't have to be present at the detail was also specifically contradicted by other members of the Police Department. 4. Your statements during the disciplinary investigation and the hearing were untruthful .... 5. The above referenced conduct violates the rules and regulations of the Department, specifically ... integrity, ... personal behavior, and ... conduct unbecoming an officer."

The judge stated: "Clearly to save his job, Officer Romeo apparently believed he had to come up with some excuse for his behavior. Creating an erroneous and unfounded 'belief' [that he could work the detail without being present] apparently was his excuse." The judge discredited the statements made by Romeo, who is a member of the Massachusetts Bar, to the point that she sent a copy of her memorandum of decision and order to the Board of Bar Overseers for investigation into whether he violated the Massachusetts Rules of Professional Conduct.

The union also contends that the judge misapplied the law and improperly found additional facts. In light of our conclusion that the judge improperly vacated the arbitrator's award on public policy grounds, we need not reach these arguments.